ROBERT W. HAWBAKER AND DELORES A. HAWBAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hawbaker v. Commissioner
Docket Nos. 5541-82, 10616-82.
United States Tax Court
T.C. Memo 1983-665; 1983 Tax Ct. Memo LEXIS 124; 47 T.C.M. (CCH) 231; T.C.M. (RIA) 83665; November 1, 1983. *124 Held: (1) Petitioners are not entitled to charitable contribution deductions claimed on their returns for 1979 and 1980; (2) petitioners may not deduct amounts expended for professional clothing and cleaning; (3) petitioners' travel and entertainment expenses are properly disallowed for lack of substantiation; and (4) petitioners are liable for addition to tax under I.R.C. sec. 6651(a). Robert W. Hawbaker and Delores A. Hawbaker, pro se. David W. Johnson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies of $5,520 in petitioners' return for 1979 and $6,850.93 for their 1980 return, as well as an addition to tax of $116.60 pursuant to section 6651(a)[1] for 1979. After concessions by the parties, the remaining issues for decision are: (1) Whether petitioners are entitled to charitable contribution deductions as claimed on their returns; (2) whether petitioners may obtain a deduction in 1979 for professional clothing and cleaning; (3) whether petitioners may obtain a deduction in 1980 for "travel and entertainment" business expenses; and (4) whether an addition to tax is due from petitioners for 1979 pursuant *125 to section 6651(a). For convenience, our Findings of Fact and Opinion will be combined for each issue. Petitioners Robert W. Hawbaker and Delores A. Hawbaker, husband and wife, were legal residents of Houston, Texas, at the time the petition was filed. During 1979 and 1980, Robert W. Hawbaker was employed as an automobile salesman in Houston, and Delores A. Hawbaker was employed as a secretary in Houston. They reported income from wages during 1979 of $40,949 and $47,045 in 1980. Petitioners filed timely petitions with this Court for each year, claiming that respondent bears the burden of proof on each of the issues in the notices of deficiency, that petitioners are entitled to a jury trial in the Tax Court, that the Commissioner's determinations and imposition of the negligence addition were erroneous, and that neither the Internal Revenue Service nor the Tax Court has jurisdiction over the subject matter. These arguments are too frivolous to warrant comment. Charitable Contributions
On their 1979 *126 joint return, petitioners claimed a total charitable contribution deduction of $19,175. On their 1980 joint return, petitioners claimed a charitable contribution of $17,300. [2] The Commissioner disallowed the 1979 and 1980 charitable deductions for lack of substantiation and for lack of evidence that amounts were expended for the proper purposes. Petitioners' testimony indicated that they first became involved with the Universal Life Church (ULC) in 1979. At a ULC meeting they meet Wayne Tharp of the Texas ULC and Kirby Hensley of the Modesto, California, branch. They became members of the ULC. During 1979 they attended approximately 10 ULC meetings, three of which were run by representatives of Modesto, and the other seven of which were "family meetings" held at petitioners' home in Houston. Petitioners testified that during 1979 they gave to Tharp $2,550 in $100 bills [3] and one brass plaque, and to two men purporting to represent Tharp they gave several items of furniture purchased a few weeks earlier for $3,150 along *127 with five used automobiles. Petitioner never saw these items again and does not know what actually became of them. Tharp gave them a purported summary receipt for the above amounts on a form letter printed on stationery containing the letterhead "Universal Life Churches of Texas," thanking the petitioners for their "more than generous donations to the church." Tharp prepared petitioners' 1979 joint return and placed the following values on the allegedly donated items for purposes of charitable deduction: Cash
$ 2,550
Furniture
3,150
Plaque [4]
2,000
Automobiles
11,475
Total
$19,175
Similarly, petitioners testified that during 1980 at ULC meetings in Houston and Dallas they gave $17,300 in cash to Tharp or Hensley in three or four separate installments. Tharp prepared their 1980 return and gave them a receipt for their alleged donation on the same stationery containing a letterhead of "Universal Life Churches of Texas" as the one they had received for 1979, and petitioners attached this letter to their *128 1980 return. At trial, petitioners testified that their contributions had been made to Modesto. In support thereof, they attempted to put into the record two letters very similar to those from Tharp, except that the letterheads contained thereon were "Universal Life Church, Inc., * * * Modesto, California," they are undated, and they apparently are signed by "Bishop R. E. Imbeau, Ph.D." Petitioners did not call Imbeau or Tharp to testify at trial. The only explanation given by petitioners for attaching the Texas, and not the Modesto, letters to their 1979 and 1980 returns was that they did not receive the Modesto receipts in time. Petitioners bear the burden of proving that they are entitled to the charitable deductions.Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Respondent in his notice of deficiency determined that petitioners did not present the proper proof that the contributions had been made. We need not address this issue, however, because, even assuming arguendo that there was adequate proof of the contributions, petitioners have not met their burden of proving that the contributions were made to a proper donee. Section 170(c) provides in pertinent part that-- *129 * * * the term "charitable contribution" means a contribution or gift to or for the use of * * * a corporation, trust, or community chest, fund, or foundation * * * organized and operated exclusively for religious * * * purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *. At trial, petitioners testified that all of their charitable contributions were made to the Modesto church. If this is true, then any donations actually made to Modesto would qualify for a charitable deduction, since Modesto was held to be exempt from taxation in Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), and based on that holding the Commissioner has ruled that Modesto is exempt from taxes under section 501(c)(3). However, if the gifts were made to the Texas ULC, petitioners are not entitled to the deduction, because this Court repeatedly has pointed out that the exemption applies only to the parent church in Modesto and not to the numerous other entities chartered by Modesto. [5] *130 On the facts here, petitioners have failed to convince us that any gifts were made to Modesto. First, petitioners have testified that they gave the purported gifts to Tharp, Hensley, or two other individuals, but petitioners have not provided the necessary link between these individuals and Modesto. [6] *131 Second--and more importantly--the purported receipts from Tharp on behalf of the "Universal Life Churches of Texas" attached to petitioners' returns are particularly propative of the petitioners' intent during the years at issue. Specifically, the filing of these letters with their returns shows that any contributions that were made were made to the ULC of Texas. Petitioners argue that the Modesto receipts show an intent to give the gifts to Modesto. Yet there is not explanation why petitioners' tax returns did not show Modesto as the recipient of the gifts. [7] *132 Thus, we are unable to believe petitioners' bare unsubstantiated testimony that they intended to donate their money and property to the Modesto church. The only other possible ground for the allowance of a charitable deduction thus would be that Texas ULC was a qualified donee. But petitioners did not provide the Court with any evidence concerning the activities of the Texas ULC. Thus, we cannot find that they have met their burden of showing that the Texas ULC was "organized and operated exclusively for religious * * * purposes" and that no part of its net earnings inured to the benefit of a private individual within the meaning of section 170(c). For these reasons, petitioners have failed to meet their burden. The charitable deductions for 1979 and 1980 were appropriately disallowed by respondent. Travel and Entertainment
Petitioners also have taken an $867 deduction on their 1980 return for "travel and entertainment" expenses incurred in their business as Amway distributors. At trial petitioners provided no corroboration for their testimony that these expenses were incurred, and they provided no specific evidence as to the amounts they incurred. Since this *133 is directly contrary to the substantiation requirements of section 274(d), the respondent's disallowance of this amount was correct. Cleaning Costs Petitioners also claimed a deduction on their 1979 return of $300 as an employee business expense, for "professional clothing and cleaning." Petitioner Robert Hawbaker testified that this $300 expense was incurred to clean suits and ties used in his occupation as an automobile salesman. He purchased six suits at the request of his employer and incurred substantial cleaning costs for those suits because they became soiled with grease and dirt very easily in his line of work as a car salesman. Petitioner used the suits approximately five percent of the time for personal purposes. Section 262 provides that, except as provided to the contrary, no deductions shall be allowed for personal living expenses. The suits that petitioner wore to work were ordinary business suits which petitioner could--and did--wear for personal events. [8] The cost of ordinary street clothing, which is not part of a uniform, and the laundering thereof, is not deductible. Roth v. Commissioner,17 T.C. 1450 (1952). [9] As we stated in Drake v. Commissioner,52 T.C. 842, 844 (1969), *134 involving an Army requirement that petitioner have his hair cut every two weeks: The evidence showed that the Army's requirement was directed toward the maintenance by the petitioner of a high standard of personal appearance and not toward the accomplishment of the duties of his employment. In setting standards for personal grooming, the Army is not unique. Many employers, expressly or otherwise, establish standards to which their employees are expected to conform. Men are to be clean shaven and are often required to wear suits, ties, and clean shirts, and women are expected to be dressed attractively. To conform to these requirements, employees must make expenditures which would not be required if they were at home or not on the job. Nevertheless, such expenditures for general personal grooming are inherently personal in nature and cannot be considered as business expenses. Petitioners may not deduct the $300 in cleaning costs on their 1979 return. Section 6651(a) Addition to Tax
The final issue *135 for decision is whether petitioners are liable for additions to tax for 1979 pursuant to section 6651(a). Petitioners' 1979 return, which was due on April 15, 1980, was not filed until May 30, 1980. Respondent's addition to tax is presumptively correct, unless petitioners show that their failure to file a timely return "is due to reasonable cause and not due to willful neglect." Section 6651(a)(1). Petitioners have offered no evidence concerning the late filing and thus have not met their burden. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. These amounts constituted approximately 50 percent of petitioners' adjusted gross income for 1979 and 44 percent of petitioners' adjusted gross income for 1980.↩
3. Petitioners testified that they did not have a bank account at this time and did not maintain a record of the cash contributions made.↩
4. Petitioner had purchased the plaque in 1971 or 1972 for $50.↩
5. E.g., Owens v. Commissioner,T.C. Memo. 1982-671; Kellman v. Commissioner,T.C. Memo. 1981-615; Riemers v. Commissioner,T.C. Memo. 1981-456↩.
6. We note that Exhibit E attached to respondent's motion to compel purports to be a letter from Lida G. Hensley of the Modesto ULC stating that Tharp was authorized to receive donations in the name of "the church." The date of this letter is May 28, 1981, which is after the years at issue. This letter was not offered into evidence, nor would it have been accepted as evidence, since Hensley has not been called to testify, and its date indicates that it is not relevant to the 1979 and 1980 tax years. Moreover, it does not provide a link between Tharp and Modesto. Petitioners also testified that petitioner had "checked [Tharp] out" with Modesto ULC, but this testimony constitutes inadmissible hearsay as to the question of whether Tharp was an agent for Modesto. And while it may be admissible as to petitioners' belief concerning Tharp's authority, it again does not provide any evidence that petitioners believed Tharp to be acting on behalf of Modesto.
7. These unauthenticated letters have not been offered into evidence. But, even if these letters had been offered as evidence in support of the existence of a donation, we would have considerable doubt as to their probative value. One of the purported Modesto receipts reflects contributions of $19,175 in 1979, which corresponds to the amount deducted by petitioners on their 1979 return. But the other purported Modesto receipt reflects contributions of $19,850 in 1980, while petitioners' 1980 return only contains a deduction for $17,300. See Daly v. Commissioner,T.C. Memo. 1982-59↩.
8. In fact, petitioner testified that the clothing he purchased for work was substantially the same as the clothing he wore at trial. ↩
9. See Peacock v. Commissioner,T.C. Memo. 1978-30↩.